<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN O'SHEA,<br><br>      Plaintiff,<br><br>v.<br><br>TOWNSHIP OF HILLSIDE, *et al.*,<br><br>      Defendants. | Civil Action No. 20-7027 (SDW) (LDW)<br><br>**OPINION**<br><br><br>December 21, 2022 |

**WIGENTON**, District Judge.

  Before this Court is Defendants Township of Hillside, Dahlia O. Vertreese, Hope Smith, John Does 1-3, and Jane Does 1-3's ("Defendants") Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 35). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  BACKGROUND**

  Plaintiff was employed by the Township of Hillside, New Jersey ("Hillside" or "the Township"), from March 2018 until his resignation in October 2019. (D.E. 35-1 ¶ 1.)[1] Defendant Dahlia O. Vertreese was Hillside's Mayor and Defendant Hope Smith was the Township's Business Administrator throughout this time period. (*Id*. ¶¶ 10; D.E. 40-11 ¶ 10.)

---

[1] Facts cited in this opinion are drawn from Defendants' Statement of Undisputed Facts ("SUF") (D.E. 35-1), Plaintiff's Response to the Statement of Undisputed Facts (D.E. 40-11), and the record documents cited therein including Plaintiff's deposition (D.E. 35-7). The facts are undisputed unless noted otherwise and, where Plaintiff admits a fact, only Defendants' SUF is cited.

A.      **Employment with the Building Department**

Plaintiff was hired as a Code Enforcement Officer in Hillside's Building Department in March 2018, when he was 66 years old. (D.E. 35-1 ¶¶ 1, 7; D.E. 35-7 at 8.) For the first six months, from March 2018 until September 2018, he performed this job without incident, had no disability, and had no problems with his employer or coworkers. (*Id*. ¶ 9; D.E. 35-7 at 48.)

In September 2018, Plaintiff developed breathing and heart issues that required medical treatment and caused him to be absent from work from September 8 to October 9, 2018. (D.E. 35-1 ¶ 11.) Specifically, he was hospitalized for three days and had a stent implanted in his heart. (D.E. 35-7 at 49, 52.) After being cleared by his doctor to return to work, he returned for several days. (*Id*. at 53.)

While at work on October 15, 2018, Plaintiff again had heart trouble and was rushed to the hospital where he had two additional stents and, a few days later, a pacemaker, implanted in his heart. (D.E. 35-1 ¶ 12; D.E. 40-11 ¶ 12.) Due to these serious medical issues, he was not able to return to work until January 14, 2019. (D.E. 35-1 ¶ 18; D.E. 35-10.) Plaintiff's coworker, James Ballentine, informed Smith that Plaintiff was rushed to the hospital, but the parties dispute the extent to which Smith was kept apprised of his medical condition during the rest of his absence. (D.E. 35-1 ¶¶ 13–16; D.E. 40-11 ¶¶ 13–16.)

By October 16, 2018, Plaintiff had exhausted all of his accrued leave and was placed on unpaid leave. (D.E. 35-1 ¶ 17.) He was not eligible for state or federal family leave act benefits because he had not worked the requisite 1250 hours with Hillside before taking leave. (D.E. 35-1 ¶ 20.) In late November 2018, Plaintiff hand delivered to Smith a letter from his doctor stating that he could return to work on January 14, 2019. (D.E. 35-1 ¶ 21; D.E. 35-7 at 75–76; D.E. 35-10.)

On November 29, 2018, after receiving the doctor's letter, Vertreese and Smith had a meeting with Plaintiff at which Vertreese informed him that, if he could not return to work within a week or so, she would have to fill his position with another employee. (D.E. 35-1 ¶¶ 22–23.) Vertreese offered Plaintiff the option of resigning in good standing and accepting a part-time position in the traffic department upon his return. (D.E. 35-1 ¶ 22; D.E. 35-7 at 78–80.) Plaintiff asked for some time to think it over, retained counsel, and sent a letter through counsel on December 4, 2018, informing Defendants that he would not voluntarily resign and looked forward to returning to work on January 14, 2019. (D.E. 35-1 ¶¶ 22, 25; D.E. 35-7 at 78–80; D.E. 35-10.)

One week before Plaintiff returned to work on January 14, 2019, Defendants filled his position with another employee. (D.E. 35-1 ¶ 28–29.) When he returned to work on January 14, he was told to go home, because the Township had to consult counsel, and that he would be informed when he could return to work. (*Id*. ¶ 29.) The following day, the Township notified Plaintiff that it would be serving him with a Preliminary Notice of Disciplinary Action because he had constructively abandoned his job by not notifying his supervisors of his absence beginning October 16, 2018, until several weeks later on November 28, 2018. (D.E. 35-17.) This disciplinary action was authorized by Vertreese, but not ultimately pursued by the Township. (D.E. 35-1 ¶ 32; D.E. 40-11 ¶ 32.) Plaintiff continued to be unpaid while his counsel disputed the authority of this threatened disciplinary action. (D.E. 40-11 ¶ 32; D.E. 35-16.)

    **B.**    **Employment with the Public Works Department**

On July 15, 2019, after discussions with the Township's counsel, Plaintiff returned to work as a Code Enforcement Officer in another department, the Public Works Department. (*Id*. ¶ 33.) This position had the same pay and benefits as his prior position, and similar job duties except that Plaintiff did not have the supervisory capacity he had in the Building Department. (*Id*. ¶ 34; D.E.

3

40-11 ¶ 34.) Plaintiff asserts that his supervisor in this new position, Hanifa Johnson, created a hostile work environment, but he did not complain to Defendants about his alleged mistreatment. (D.E. 35-1 ¶¶ 35–36.) On October 4, 2019, Plaintiff voluntarily resigned from his employment with Hillside. (D.E. 35-1 ¶ 42; D.E. 35-12.)

      **C.**      **Procedural History**

Plaintiff filed the instant lawsuit on June 9, 2020. (*See* D.E. 1.) The Complaint asserts claims against Hillside for disability discrimination in violation of Title VII and the ADA (Count One), age and disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* (Counts Two and Four), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count Three); and asserts that Defendants Vertreese and Smith aided and abetted the discrimination forbidden by the NJLAD (Count Six). (D.E. 1 ¶¶ 42–68, 78–80; D.E. 36.) The Complaint also asserts that all three defendants retaliated against him based on his political affiliation in violation of 42 U.S.C. § 1983 (Count Five) and deprived him of a right to employment in violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.* (Count Seven). Following discovery, Defendants filed the instant Motion for Partial Summary Judgment and briefing was timely completed. (D.E. 35, 40, 41.)

**II.**      <u>**LEGAL STANDARD**</u>

A party moving for partial summary judgment must identify the claims or parts of claims on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A fact is "material" for purposes of a summary judgment motion only if a dispute over that fact "might affect the outcome of the suit under the

4

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Thomas v. Tice*, 948 F.3d 133, 138, 140 (3d Cir. 2020).  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  If the moving party meets this initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing that there is a genuine issue for trial" and may not rely on his pleadings, "[b]are assertions, conclusory allegations, or suspicions." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quotation marks omitted).  Both parties must support their assertions that a fact is disputed, or cannot be disputed, by citing to "particular parts of materials in the record" such as depositions or affidavits, or by showing that an adverse party "cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  If the nonmoving party does not identify record material sufficient "to establish the existence of an essential element of its case on which it bears the burden of proof at trial," then there is no need for trial—"the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

5

However, this Court is not required to accept as true allegations that are "so utterly discredited by the record that no reasonable jury could have believed [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Nor is this Court required to take into account evidence that would not be admissible at trial. *Blunt*, 767 F.3d at 297.

## III.   DISCUSSION

Defendants move for summary judgment as to Counts Two and Four insofar as they allege a hostile work environment, and as to Counts Five, Six, and Seven in their entirety. (D.E. 35-5 at 5.) Plaintiff concedes that summary judgment in favor of Defendants is appropriate with regard to Count Five. (*See* D.E. 40 at 4.)

### A.   Hostile Work Environment under the NJLAD (Counts Two and Four)

In Counts Two and Four, Plaintiff alleges age and disability discrimination in violation of the NJLAD, including a hostile work environment. (D.E. 1 ¶¶ 51–56, 65–68.) The NJLAD prohibits employment discrimination based on characteristics including disability and age. N.J.S.A. 10:5-12. To establish a hostile work environment claim under the NJLAD, a plaintiff "must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [protected characteristic]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person with that characteristic] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Taylor v. Metzger*, 706 A.2d 685, 688–89 (N.J. 1998)); *see also Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII.")

6

Determining "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," but "no single factor is required." *Id.* Hostile work environment claims are "based on the cumulative effect of individual acts" typically occurring over "a series of days or perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002); *but see Taylor*, 706 A.2d at 693–94 (concluding that a single incident, if sufficiently severe, could create a hostile work environment under the NJLAD).

Defendants, who construe Plaintiff's hostile work environment claims as concerning only the conduct of supervisor Johnson, argue that they are entitled to summary judgment on these claims because nothing in the record establishes that Johnson's alleged acts were due to Plaintiff's age or disability, and because Plaintiff does not allege sufficiently severe or pervasive mistreatment. (D.E.35-5 at 12–13.) However, Plaintiff alleges mistreatment by Vertreese and Smith, as well as Johnson, and this Court finds that Plaintiff's deposition testimony—taken as true—could persuade a reasonable jury that he established all four elements of his hostile work environment claims.

Plaintiff testified in his deposition that, in November 2018, one day after he delivered a doctor's letter to Smith stating that he could not work until January 2019, Vertreese asked him to resign or accept a different job, and threatened termination if he did not accept those alternatives, and Smith told him, "John, you went through a lot with your heart. Just retire. Relax. Enjoy life." (D.E. 35-7 at 75–80.) These circumstances and comments could infer that Defendants pressured him to resign due to his disability and/or age, satisfying the first element.

Plaintiff's testimony could also establish the remaining elements, especially when the effects of the alleged mistreatment, occurring over the course of several months, are considered cumulatively. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–16. Plaintiff testified that when his employment was reinstated but he was switched to the Public Works Department, he was assigned an old car called "the green monster" that had bald tires, no air conditioning, and was "totally unsafe." (*Id*. at 99–101.) His new supervisor, Johnson, "holler[ed] at" him for speaking to a resident while giving out a notice of violation, did not explain how he should handle aspects of his job, and was insensitive about his daughter being in the hospital. (*Id*. at 102–05.) Plaintiff also testified that, because he took medical leave and refused to resign, Defendants threatened termination, told him to go home one day after he reported back to work, and did not inform him of what was happening with his employment. (*Id*. at 79, 85–86.) Eventually they considered him to have abandoned his position which made him uncertain whether he could find work in neighboring towns. (*Id*. at 93.) All of this uncertainty around his employment, pay, and medical benefits led to depression and other emotional distress. (*Id*. at 127–28.)

This Court finds Plaintiff's testimony is sufficient to demonstrate genuine issues of material fact as to whether Plaintiff experienced sufficiently severe or pervasive mistreatment due to his disability and/or age so as to constitute a hostile work environment under the NLJAD. As such, Defendants' motion for summary judgment is denied as to the hostile work environment claims asserted in Counts Two and Four. *See* Fed. R. Civ. P. 56(c)(1); *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 309 (3d Cir. 2018) ("We deny summary judgment if there is enough evidence for a jury to reasonably find for the nonmovant.")

### B.  Aiding and Abetting Discrimination (Count Six)

In Count Six, Plaintiff seeks to hold defendants Vertreese and Smith liable for aiding and abetting the acts that constitute his NJLAD hostile work environment and failure-to-accommodate claims alleged in Count Two.  (D.E. 1 ¶ 79; D.E. 40 at 14.)  However, Plaintiff alleges that it was their direct acts and omissions as supervisors that violated the NJLAD so, while Hillside may be vicariously liable for their conduct, there is no basis for their individual liability under the NJLAD.

The NJLAD principally prohibits discrimination by an "employer," but also makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce" acts prohibited by the NJLAD, "or to attempt to do so." N.J.S.A. 10:5-12(a), (e).  The New Jersey Supreme Court has interpreted this to mean that individuals, including supervisors, may be liable under the NJLAD only insofar as they aid or abet an employer's discrimination, and not for their direct acts.  *See Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004) (holding that an individual supervisor is not an "employer" under the NJLAD); *Cicchetti v. Morris Cnty. Sheriff's Off.*, 194 N.J. 563, 594 (2008) ("[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the "aiding and abetting" mechanism that applies to "any person.").[2]

To hold an individual defendant liable as an aider or abettor of employment discrimination under the NJLAD, "(1) the [employer] whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [her] role as part of an overall illegal

---

[2] Plaintiff cites persuasive authority for the proposition that "New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct." (D.E. 40 at 14.) *DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015).  This Court has reviewed the only New Jersey case cited therein, which does not support that conclusion. *Id.* (citing *Cicchetti v. Morris Cnty. Sheriff's Off.*, 194 N.J. 563 (2008)).  The New Jersey Supreme Court in *Cicchetti* agreed with the Appellate Division's reasoning that individuals "could only be liable to plaintiff if they were aiders and abettors . . . [and] could *not* aid or abet their own acts, [so] there was no statutory basis for plaintiff's complaint against them." *Cicchetti v. Morris Cnty. Sheriff's Off.*, 194 N.J. 563, 573 (2008) (emphasis added).

9

or tortious activity at the time that [she] provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.'" *Tarr*, 181 N.J. at 84–85 (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 129 (3d Cir.1999) (brackets and quotation marks omitted).

Where this standard for individual liability is not met, a supervisor's actions may still result in liability for her employer through agency principles of tort law that apply to NJLAD claims. *See Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 615–627 (1993); *Taylor*, 152 N.J. at 503 (recognizing that a supervisor has a "duty to prevent, avoid, and rectify invidious harassment in the workplace"); *Cicchetti*, 194 N.J. at 592 (stating that "the acts or failure to act by a supervisor who knew or should have known of the hostile environment" will be imputed to the employer). "[A]n employer whose supervisory employee is acting within the scope of his or her employment will be liable for the supervisor's conduct in creating a hostile work environment." *Lehmann*, 132 N.J. at 619. An employer may also be liable for a supervisor's acts outside the scope of her employment under negligence principles. *Id*. at 622.

Plaintiff contends that Vertreese and Smith aided and abetted Hillside's violations of the NJLAD by pressuring him to resign, considering his absence a constructive resignation, advising him to not return to work, filling his position with another employee, and transferring him to another position based on his disability. (D.E. 40 at 13–17.) As alleged, these are all direct acts by Vertreese and Smith acting on behalf of Hillside, and not acts aiding and abetting another actor. Plaintiff's opposition confirms that Vertreese and Smith were the principal actors; he does not contend that they aided or abetted anyone else.[3] Accordingly, Vertreese and Smith's acts and

---

[3] *See, e.g.* D.E. 40 at 15 ("It is, in large part, the direct conduct of Vertreese and Smith which forms the basis of the hostile work environment alleged against Hillside."); *id*. at 16 (stating that the failure to accommodate claim against Hillside depends on "the actions (or omissions) of Vertreese and Smith"); *see also* D.E. 40-2 at 5 (alleging that

10

omissions may be imputed to Hillside, but Plaintiff cannot maintain aiding-and-abetting claims against them as individuals.[4] *See Cicchetti*, 194 N.J. at 595 (finding evidence that supervisors had failed to act to protect discrimination, but imputing their acts to their employer and finding no basis for individual liability under the NJLAD).

### C. Deprivation of a Right under the NJCRA (Count Seven)

In Count Seven, Plaintiff asserts that Defendants deprived him of a "right to employment" without due process of law, in violation of the NJCRA. (D.E. 1 ¶¶ 81–84.)[5] The NJCRA protects against the deprivation of any "*substantive* rights, privileges or immunities secured by the Constitution or laws" of New Jersey. N.J.S.A. 10:6-2(c) (emphasis added). Unlike its federal analog, 42 U.S.C. § 1983, it does not protect against the deprivation of procedural rights. *Tumpson v. Farina*, 218 N.J. 450, 477 (2014) ("Section 1983 provides remedies for the deprivation of both procedural and substantive rights while [the NJCRA] provides remedies only for the violation of substantive rights."). A statute creates a substantive right only if it "unambiguously impose[s] a binding obligation" on a government entity. *Id.* at 477–78 (finding that N.J.S.A. 40:69A-185, which states "voters shall . . . have the power of referendum," created a substantive right to referendum).

---

Defendant Hillside violated the New Jersey Law Against Discrimination by and through the acts of its representatives, Defendants Vertreese and Smith").

[4] Under the same theory, Hillside may be liable to Plaintiff for the alleged acts of supervisor Johnson. "[I]f an employer delegates the authority to control the work environment to a supervisor and that supervisor abuses that delegated authority, then vicarious liability . . . will follow." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 620 (1993).

[5] Count Seven also references a right to equal protection, but the Complaint contains no factual allegations to support such a claim, which requires showing that similarly situated comparators were treated differently. (*See* D.E. 1.) *See generally PG Publ'g Co. v. Aichele*, 705 F.3d 91, 114–16 (3d Cir. 2013) (discussing three types of equal protection claims). Nor does Plaintiff mention equal protection in his opposition brief. (*See* D.E. 40.) Accordingly, this Court construes Count Seven as alleging only a deprivation of Plaintiff's right to employment, and not a deprivation of a right to equal protection.

Count Seven is a procedural due process claim that is not cognizable under the NJCRA. *See* N.J.S.A. 10:6-2(c); *Tumpson*, 218 N.J. at 477. Plaintiff contends that he had a property right to his employment in civil service, and that he was not afforded adequate process prior to being suspended and terminated from that employment. (D.E. 40 at 18.)[6] However, Plaintiff fails to identify any section of the New Jersey laws or Constitution that grant him a substantive right to employment, so his claim that Defendants deprived him of such a right in violation of the NJCRA claim must be dismissed. *See* N.J.S.A. 10:6-2(c).

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is **GRANTED** with respect to Plaintiff's claims of political retaliation (Count Five), aiding and abetting employment discrimination (Count Six), and deprivation of a right to employment under the New Jersey Civil Rights Act (Count Seven), but **DENIED** with respect to the remaining claims. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
             Parties

---

[6] In his opposition, Plaintiff cites New Jersey regulations relating to the NJLAD's reasonable accommodation provisions as a source of a substantive right. (D.E. 40 at 18–19 (citing N.J.A.C. 13:13-2.5).) However, Count Seven does not assert a deprivation of a right to a reasonable accommodation and Plaintiff may not amend his complaint in his opposition papers. *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). In any event, Plaintiff raises that claim in Count Two, and Defendants do not seek summary judgment on that claim.